## WHALEN v. UNION BAG & PAPER CO.

(Supreme Court, Appellate Division, Third Department. May 16, 1911.)

1. WATERS AND WATER COURSES (§ 71*)—POLLUTION OF STREAMS—APPORTIONMENT OF DAMAGES.

   Where several persons contribute to the pollution of a stream, it is proper to apportion the damages.

   [Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 71.*]

2. INJUNCTION (§§ 13, 24*)—ISSUANCE—DISCRETION OF COURT.

   Equity need not issue an injunction, which will produce great public or private mischief, merely to protect a technical or unsubstantial right, and whether equity will enjoin a wrongful act, where the damages are not substantial, depends on the circumstances.

   [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 13, 23; Dec. Dig. §§ 13, 24.*]

3. WATERS AND WATER COURSES (§ 75*)—POLLUTION OF STREAMS—INJUNCTION.

   An operator of a pulp mill discharged the refuse of the mill into a stream running through the land of another used for pasture and meadow land. Others also polluted the stream. The damages from the aggregate pollution to the landowner was insignificant compared to the injury resulting to the operator of the mill in compelling it to discontinue operation, and the landowner would not be materially aided by an injunction restraining the discharge from the pulp mill. *Held*, that the landowner was not entitled to an injunction, but that on a later showing that the stream was otherwise reasonably pure he could, on a proper showing of the facts, obtain an injunction, or he could take action for other relief for injury to his property subsequently occurring.

   [Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 66; Dec. Dig. § 75.*]

   Smith, P. J., and Betts, J., dissenting.

Appeal from Trial Term, Saratoga County.

Action by Robert E. Whalen against the Union Bag & Paper Company. From a judgment for plaintiff entered on a decision of the court without a jury, defendant appeals. Modified, and conditionally affirmed, as modified.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before SMITH, P. J., and KELLOGG, SEWELL, HOUGHTON, and BETTS, JJ.

J. S. L'Amoreaux, for appellant.
Robert E. Whalen, pro se.

PER CURIAM. The plaintiff is owner of lands through which Kayaderosseras creek, in the county of Saratoga, flows, and the defendant owns and operates a pulp mill located on said creek above the lands of plaintiff. The defendant discharges its refuse into said creek, and this action is brought to restrain such pollution, and has resulted in a decree perpetually restraining the defendant from so doing, together with damages.

The defendant's plant represents an investment of hundreds of thousands of dollars, and in comparison the plaintiff's farm is of insignificant value. The stream is also polluted by the refuse from a tannery belonging to the American Hide & Leather Company and other mills situated thereon. The learned trial court did not apportion the damages and charge the defendant with that part of the damage which it caused. If the defendant shall discontinue the discharge of its refuse into the creek, the water will still be polluted by the refuse from the tannery, as the trial court expressly finds.

[1] Where several persons contribute to the pollution of a stream, it is proper to apportion the damages. Sammons v. City of Gloversville, 34 Misc. Rep. 459, 70 N. Y. Supp. 284, affirmed 67 App. Div. 628, 74 N. Y. Supp. 1145; Id., 175 N. Y. 346, 67 N. E. 622. Notwithstanding the fact that the defendant may have bought its peace at a previous time by paying the plaintiff damages at the rate allowed in the judgment appealed from, we think the damages recovered are altogether too much for that part of the injury which the defendant inflicted, and that $100 per year is an ample allowance. The creek runs through mere pasture and meadow land of the plaintiff; and, while the water of the creek is made foul and offensive from the aggregate pollution, the injury to the plaintiff is insignificant compared to the injury which would result to the defendant in compelling it to discontinue the operation of its pulp mill.

[2] A court of equity is not bound to issue an injunction, when it will produce great public or private mischief, merely for the purpose of protecting a technical or unsubstantial right. Gray v. M. R. Co., 128 N. Y. 499, 509, 28 N. E. 498; Loucks v. Payne, 140 App. Div. 776, 125 N. Y. Supp. 850. Whether a court of equity will enjoin a wrongful act where the damages are not substantial depends upon the circumstances. The facts show that it would not materially aid the plaintiff in his endeavor to purify the waters if the defendant were enjoined from emptying its mill refuse into the creek.

[3] The judgment should be modified by eliminating that part granting an injunction, and providing that the plaintiff may at any time apply at the foot of the judgment for an injunction upon showing that otherwise the creek is reasonably pure, or that the other parties illegally contaminating it are properly enjoined or have ceased to pollute the same, and that, upon showing such facts and making it

appear that the ends of justice so require, an injunction substantially as mentioned in the judgment, or such as the court may direct, shall issue, or, at the plaintiff's election, that he may take such action for such other or further relief as he may be advised on account of any injury to his property hereafter occurring; and the judgment is reversed upon the law and facts, and new trial granted with costs to appellant to abide event, unless plaintiff stipulates to reduce the damages to $100 per year, in which case the judgment is so modified, and, as modified, hereby affirmed without costs to either party.

SMITH, P. J., dissents.

BETTS, J. I dissent. After a long and careful trial, the learned trial court has awarded to the plaintiff the sum of $1,482, being about $312 per year since 1895, as damages against the defendant for polluting the Kayaderosseras creek, which flows for about two miles through plaintiff's farm of 255 acres, and has granted a permanent injunction against the further pollution of said stream by defendant, suspending the action of the injunction, however, for the term of one year from the final determination of any appeal that may be taken from said judgment. This court is about to practically reverse this judgment by reducing the damages to $100 per year, and then holding that, because the damages are not substantial, a court of equity need not issue an injunction. Since there is neither findings nor evidence to justify the reduction, the reasoning might have been made more convincing if the reduction had been made to 6 cents per year, instead of $100 per year. The opinion of reversal or modification further holds that because others pollute this stream and the damages were not apportioned in an action in which the other wrongdoers were not parties, and whose damages the plaintiff did not attempt to measure, that the injunction shall be suspended until such time as plaintiff shows that the stream is otherwise reasonably pure, or that the other parties defiling it are enjoined, when plaintiff may apply for the renewal of the injunction. Of course, this provision substantially defeats itself, as the other wrongdoers if brought to court by plaintiff can point to this defendant (claimed to be the chief offender) and insist that while it, the defendant, is not restrained they should not be, so that this judgment, if it remain, renders plaintiff impotent to obtain an injunction against any defiler of this stream. Such has never been the law in this state. One of the reasons given in the prevailing opinion for the denial of this injunction is that the value of plaintiff's property is insignificant as compared with "the investment of hundreds of thousands of dollars in defendant's plant." It has always been the boast of equity that any substantial injustice might be corrected by it to even the humblest suitor, and that the financial size of such a suitor's antagonist was not important. I think the judgment appealed from is just and equitable. The damages are well within that testified to by all plaintiff's witnesses and some of defendant's. Pollution by others should not affect the injunction, as plaintiff has the absolute right to attack such defiler of the stream first as he is advised. See Sammons v. City of Gloversville, 34 Misc. Rep. 459–460, 70 N. Y. Supp. 284

(affirmed 67 App. Div. 628, 74 N. Y. Supp. 1145; Id., 175 N. Y. 346, 67 N. E. 622), where the learned jurist holds:

"It is true that the injury to plaintiff will not be wholly obviated by restraining the defendant alone, but, if the plaintiff suffers substantial damages from one, he has the right, I think, to stop that, notwithstanding the fact that he may suffer also from another source. He could sue all and thus obtain entire relief; but he has the right also to sue the persons who injure him separately, and, if he proves substantial injury from that source, he has the right to have that part of the injury cease. He can take the others in their order, if he sees fit, and thus relieve himself entirely or he can waive the injury by not asking to be relieved."

See, also, the authorities cited in the opinion. See, also, Warren v. City of Gloversville, 81 App. Div. 291, 293, 80 N. Y. Supp. 912, 913, where the court holds:

"When, however, the damages are substantial, the fact that an injunction would interfere with great industries, the development of natural resources, or with the plans of a great city for drainage, is not a sufficient reason for relaxing the ordinary rules governing the rights of riparian owners of land. Strobel v. Kerr Salt Co., 164 N. Y. 303, 58 N. E. 142, 51 L. R. A. 687, 79 Am. St. Rep. 643. Where wrongful interference with the waters of a stream causes substantial injury, an injunction to the person so substantially injured is a matter of right."

In these two cases injunctions were issued against a city of 18,000 inhabitants stopping it from depositing its sewage in a flowing stream at the instance of a small property holder farther down the stream.

See, also, Strobel v. Kerr Salt Co., 164 N. Y. 303, 320, 58 N. E. 142, 147, 51 L. R. A. 687, 79 Am. St. Rep. 643, where the court holds, Judge Vann writing:

"There is nothing about the case now before us to take it out of the general rules governing the rights of riparian owners. Those rules are well established in this state; and, so far as material to the case before us, are, in the absence of modification by grant or prescription, as follows: A riparian owner is entitled to a reasonable use of the water flowing by his premises in a natural stream as an incident to his ownership of the soil, and to have it transmitted to him without sensible alteration in quality or unreasonable diminution in quantity. While he does not own the running water, he has the right to a reasonable use of it as it passes by his land. As all other owners upon the same stream have the same right, the right of no one is absolute, but is qualified by the right of the others to have the stream substantially preserved in its natural size, flow, and purity, and to protection against material diversion or pollution. This is the common right of all, which must not be interfered with by any. * * * While the courts will not overlook the needs of important manufacturing interests, nor hamper them for trifling causes, they will not permit substantial injury to neighboring property, with a small but long-established business, for the purpose of enabling a new and great industry to flourish. They will not change the law relating to the ownership and use of property in order to accommodate a great business enterprise. According to the old and familiar rule, every man must so use his own property as not to injure that of his neighbor, and the fact that he has invested much money and employs many men in carrying on a lawful and useful business upon his own land does not change the rule, nor permit him to permanently prevent a material portion of the water of a natural stream from flowing over the land of a lower riparian owner, or to so pollute the rest of the stream as to render it unfit for ordinary use. The fact that other salt manufacturers are doing the same thing as the defendant, instead of preventing relief, may require it."

This latter case is authority for practically all the questions involved in the judgment herein appealed from. This case makes a new departure in riparian law. I have not been pointed to, nor can I find, any precedent where an injunction has been denied in this state to a lower riparian owner against an upper one who substantially pollutes the stream by depositing large quantities of poisonous matter therein, and such pollution continues until it reaches the lower owner. I think the judgment here was very well considered. The one year respite after the end of the litigation gives defendant ample time to arrange for some other method of disposing of its offensive and poisonous discharge from its mill than into the stream which flows for two miles through plaintiff's land.

It follows that the judgment should be affirmed, with costs.